IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| H&R BLOCK TAX SERVICES LLC, | |
|---|---|
| Plaintiff, | Case No. 4:19-cv-00154-NKL |
| v. | |
| KIM SANTIAGO | |
| and | |
| MAX TAX, LLC, | |
| Defendants. | |

**ORDER GRANTING**
**PRELIMINARY INJUNCTION**

Pending before the Court is Plaintiff H&R Block Tax Services LLC's ("H&R Block's") Motion for Preliminary Injunction, as well as H&R Block's Suggestions in Support of that Motion. After review of that Motion, the evidence presented at the Preliminary Injunction Hearing held on March 28, 2019, all briefing and argument of counsel, the Verified Complaint, the record, and applicable law, the Motion is hereby **GRANTED**.

**I.     JURISDICTION AND CHOICE OF LAW**

Personal jurisdiction over a non-resident defendant may be obtained by consent or by waiver. *Whelan Sec. Co. v. Allen*, 26 S.W.3d 592, 595 (Mo. Ct. App. 2000). Personal jurisdiction is an individual right, and that right may be waived in advance through a forum selection clause contained in a contract between the parties. *Id*. Under Missouri law, contractual choice-of-law provisions are enforced. *PVI, Inc. v. Ratiopharm GmbH*, 253 F.3d 320, 326 (8th Cir. 2001) (citing *Rheem Mfg. Co. v. Progressive Wholesale Supply Co.*, 28 S.W.3d 333, 339 (Mo. Ct. App. 2000)).

Section 27 of the Franchise License Agreement ("FLA") between the parties, attached as Exhibit 1 to the Verified Complaint, specifies that Missouri law applies and further provides for jurisdiction and venue in this forum. Thus, Defendants have stipulated and consented to Missouri law as the choice of law and to personal jurisdiction in this Court.

## II. H&R BLOCK HAS SHOWN THAT IT IS ENTITLED TO THE REQUESTED RELIEF

The following four factors are properly considered when determining whether a preliminary injunction should issue: (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; and (4) the public interest. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013); *see also Dataphase Sys. Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Baker Elec. Coop., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994) (internal quotations omitted). Moreover, in considering these factors, the court may properly consider evidence that would ordinarily be inadmissible, such as hearsay, in support of granting a preliminary injunction. *See, e.g.*, *Ass'n of Cmty. Organizations for Reform Now v. Scott*, No. 08-CV-4084, 2008 WL 2787931, at *3 n. 5 (W.D. Mo. July 15, 2008).

Here, every one of the relevant factors supports H&R Block's request for entry of a preliminary injunction to preserve the *status quo* and to protect H&R Block from ongoing irreparable injury attributable to Defendants' conduct.

### A. H&R Block Is Substantially Likely to Succeed on the Merits of Its Claims Against Defendants

H&R Block has shown a substantial likelihood of success on the merits of its breach of contract claim against Defendants. The evidence presented in H&R Block's Verified Complaint

and at the Preliminary Injunction Hearing demonstrates that Defendants—as well as other persons and entities acting in concert with them—have violated and are actively violating the FLA's reasonable, enforceable noncompetition and nonsolicitation covenants (collectively, the "Covenants"), by which they have agreed to be bound.

### 1. The Covenants Are Enforceable and Reasonably Tailored

Under Missouri law, "[n]on-compete agreements are typically enforceable so long as they are reasonable." *Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 610 (Mo. 2006) (en banc). The Missouri Supreme Court has found that a noncompetition agreement is valid and enforceable if it: (1) "is no more restrictive than is necessary to protect the legitimate interest of the employer"; and (2) can be "narrowly tailored geographically and temporally." *Id.*; *see also Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 74 (Mo. 1985) (en banc) ("Covenants against competition must serve a proper interest of the employer in protecting the good will of a business, and must be reasonably limited in time and space.").

Reasonable restrictions are enforceable to protect "the employer's trade secrets or customer contacts." *Healthcare Servs.*, 198 S.W.3d at 610; *see also Osage Glass,* 693 S.W.2d at 74 ("Covenants against competition must serve a proper interest of the employer in protecting the good will of a business, and must be reasonably limited in time and space."); *Superior Gearbox Co. v. Edwards*, 869 S.W.2d 239, 247 (Mo. Ct. App. 1993) ("[A] covenant restricting an employee's right to compete must be reasonably necessary to protect the employer's legitimate interests and reasonable as to time and geographic scope."). The post-termination Covenants in the FLA protect interests that Missouri recognizes as legitimate and are protectable as a matter of law, including: H&R Block's investment in the parties' transactions; H&R Block's established brand, goodwill, and confidential business information; and H&R Block's interest in preventing Defendants from unfairly using such assets to compete with H&R Block, diverting away its clients,

and obtaining an undue advantage for their competing business. *See, e.g.*, *Safety-Kleen Sys., Inc. v. Hennkens*, 301 F.3d 931, 937 (8th Cir. 2002) ("The Missouri courts have frequently held that . . . substantial and individualized customer contacts are a protectable interest warranting injunctive relief enforcing a covenant not to compete."); *Kessler-Heasley Artificial Limb Co. v. Kenney*, 90 S.W.3d 181, 186 (Mo. Ct. App. 2002) ("Stock in customers, also referred to as customer contacts, are a legitimate protectable interest."). H&R Block also has a legitimate and protectable interest in protecting its client information and client relationships from use by a competitor. *See Mid-States Paint & Chem. Co. v. Herr*, 746 S.W.2d 613, 617 (Mo. Ct. App. 1988) ("The employer has protectable rights in trade secrets and customer contacts."); *see also Naegele v. Biomedical Sys. Corp.*, 272 S.W.3d 385, 389 (Mo. Ct. App. 2008) ("In Missouri, the courts have identified two protectable interests of employers: customer contacts and trade secrets.").

In this case, the Covenants are also appropriately narrow in both time and geographic reach. First, the noncompetition and nonsolicitation provisions are limited to two years after the termination of the FLA, subject to tolling for periods of noncompliance. Furthermore, the geographic area of the noncompetition provision is limited to Defendants' former Franchise Territory[1] and an area within twenty-five miles of that territory. *See, e.g.*, *H&R Block Tax Servs. LLC v. Clayton*, No. 4:16-cv-00185, 2016 WL 1247205, at *3 (W.D. Mo. Mar. 24, 2016) (Bough, J.) (upholding 2-year, 25-mile non-competition agreement in a franchise agreement); *H&R Block Enters. LLC v. Ascher*, No. 4:15-cv-00178, 2015 WL 12746197, at *2 (W.D. Mo. Apr. 3, 2015) (Bough, J.) (upholding three- or five-year, 50-mile non-competition agreement under an asset purchase agreement); *Kessler-Heasley*, 90 S.W.3d at 188 (upholding five-year limit within a 50-mile radius); *Watlow Elec. Mfg. Co. v. Wrob*, 899 S.W.2d 585, 587–88 (Mo. Ct. App. 1995)

---

[1] Capitalized terms not defined herein shall have the same meaning as provided in the FLA and its attached exhibits.

4

(upholding five-year time limit); *Champion Sports Ctr., Inc. v. Peters*, 763 S.W.2d 367, 368–70 (Mo. Ct. App. 1989) (enforcing a restrictive covenant barring the seller of a business from competing with it for eight years in three counties); *Long v. Huffman*, 557 S.W.2d 911, 915 (Mo. Ct. App. 1977) (upholding a covenant barring competition for five years within a sixty-mile radius). The Covenants are also appropriate under Missouri law because they were agreed to as part of a business transaction. *See Orthotic & Prosthetic Lab, Inc. v. Pott*, 851 S.W.2d 633, 643 n.4 (Mo. Ct. App. 1993) (explaining that "Missouri courts have long recognized a distinction between covenants ancillary to a sale of a business and covenants merely ancillary to an employment contract, showing substantially greater liberality in enforcing the former").

The Covenants are valid under Missouri law and will be enforced against Defendants. They are reasonably tailored to protect H&R Block's legitimate interests and are reasonably tailored in time and geographic scope.

### 2. Defendants Breached the Covenants by Opening a Competing Tax Preparation Business and Soliciting Former Clients

The noncompetition and nonsolicitation Covenants run for two years following the termination of Defendants' FLA (tolled for any periods of Defendants' noncompliance). The FLA was terminated on November 13, 2018, and therefore the Covenants run until *at least* November 13, 2020. The evidence presented through the Verified Complaint and at the hearing in this matter establishes that Defendants currently own, operate, or are materially assisting with a competing tax preparation business operating under the name "Max Tax" and/or "The Original Max Tax" less than twenty-five miles from their former franchise territory and office in Gretna, Louisiana. In fact, Defendants' competing tax preparation business is operating out of the very same location as Defendants' former H&R Block franchise office. What is more, the evidence presented to the Court demonstrates that Sarah Kennerson and The Original Max Tax LLC are acting in active

concert with Defendants to violate the FLA by, among other things, operating the tax preparation business at Defendants' former franchise office location. Accordingly, Ms. Kennerson and The Original Max Tax LLC should also be enjoined.

Therefore, Defendants have violated and are violating the Covenants. As such, H&R Block is likely to succeed on the merits of its breach of contract claim against Defendants.

### B. H&R Block Will Suffer Irreparable Harm Without a Preliminary Injunction

H&R Block has also shown that it will suffer irreparable harm if injunctive relief is not granted. Irreparable harm is established if monetary remedies cannot provide adequate compensation for improper conduct. *Rogers Grp., Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 789 (8th Cir. 2010); *Minana v. Monroe*, 467 S.W.3d 901, 907 (Mo. Ct. App. 2015). Courts have also presumed irreparable injury from a breach of a covenant not to compete or solicit. *See, e.g.*, *H&R Block Tax Servs. LLC v. Haworth*, No. 4:15-cv-00211, 2015 WL 5601940, at *4 (W.D. Mo. Sept. 22, 2015) (Bough, J.) ("Irreparable harm also properly is presumed where, as here, there is evidence that a covenant not to compete is breached or confidential, proprietary information is being improperly used."); *see also Osage Glass*, 693 S.W.2d at 75; *Safety-Kleen*, 301 F.3d at 935; *Moore Bus. Forms, Inc. v. Wilson*, 953 F. Supp. 1056, 1062 (N.D. Iowa 1996), *aff'd*, 105 F.3d 663 (8th Cir. 1996). The loss of clients and business is also an irreparable injury. *See Associated Producers Co. v. City of Independence*, 648 F. Supp. 1255, 1258 (W.D. Mo. 1986); *see also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975); *Am. Nat'l Ins. Co. v. Coe*, 657 F. Supp. 718, 723 (E.D. Mo. 1986).

As an initial matter, here Defendants agreed in the FLA that a breach of the Covenants would cause irreparable injury to H&R Block such that injunctive relief would be appropriate. Furthermore, if the Court does not intervene immediately to enjoin Defendants' conduct, H&R Block will continue to sustain irreparable damage in the form of lost clients and goodwill.

Defendants are competing against H&R Block for its clients, out of the very office space where the former franchise office was located, as well as in close proximity to other H&R Block offices. And Defendants' activities are occurring during tax season and will impact H&R Block most severely during the next few weeks (between now and April 15, 2019) when many income tax returns for tax year 2018 will be filed. Without a preliminary injunction, H&R Block faces a strong possibility that it will lose a substantial part, if not all, of the clients of the former franchise due to Defendants' breaches and will be severely impeded in re-establishing a tax preparation business in Defendants' former Franchise Territory.

Based on the authority cited and the evidence presented, this factor also favors entry of preliminary injunction.

### C. The Balancing of Hardships Weighs in Favor of H&R Block

The balance of hardships likewise weighs in favor of H&R Block. The injury to H&R Block's relationships with its clients and injury to its business and assets outweighs any potential harm that the proposed relief may cause Defendants. Any harm to Defendants is self-inflicted and the restraints being placed on Defendants are no greater than those to which they already agreed. *See, e.g.*, *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 997 (8th Cir. 2011) (balance of harms weighed in plaintiff's favor because defendant's harm was "largely self-inflicted"). Having accepted significant financial and other benefits from their agreements with H&R Block, Defendants should not now be relieved of their own obligations. *See Emerson Elec. Co. v. Rogers*, 418 F.3d 841, 846 (8th Cir. 2005) ("Rogers knowingly and voluntarily agreed to be restricted by the covenant, and any perceived harm to him by the enforcement of the agreement is outweighed by the harm foreseeable to Emerson.").

### D. The Public Interest Favors the Issuance of a Preliminary Injunction

The public interest also favors H&R Block. Missouri courts have specifically found that the enforcement of restrictive covenants serves the public interest, and this Court agrees. *See Schott v. Beussink*, 950 S.W.2d 621, 625 (Mo. Ct. App. 1997) ("Missouri courts recognize that public policy approves employment contracts containing restrictive covenants because the employer has a proprietary right in its stock of customers and their good will, and if the covenant is otherwise reasonable, the court will protect the asset against appropriation by an employee."); *cf. Haines v. VeriMed Healthcare Network, LLC*, 613 F. Supp. 2d 1133, 1137 (E.D. Mo. 2009) ("'The recognized benefits of reasonably enforced noncompetition covenants are now beyond question.'") (quoting *Lektro–Vend Corp. v. Vendo Co.*, 660 F.2d 255, 265 (7th Cir. 1982)). The public interest is also furthered by preserving the enforceability of contractual relationships. *See Walters v. M & I Marshall & Ilsley Bank*, No. 09-0506, 2009 WL 2069581, at *3 (W.D. Mo. July 14, 2009).

As such, this final factor also weighs in favor of the requested relief.

**ACCORDINGLY, IT IS HEREBY ORDERED** that H&R Block's Motion is **GRANTED.** Defendants are ordered to perform all of their contractual obligations to H&R Block.

**IT IS FURTHER ORDERED** that Defendants, their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert with them, including without limitation Sarah Kennerson and The Original Max Tax LLC, are preliminarily restrained and enjoined from directly or indirectly doing any of the following:

1. Violating the terms of the FLA, attached as Exhibit 1 to the Verified Complaint filed in this action, including without limitation the noncompetition, nonsolicitation, and other covenants set forth in Section 12 of the FLA;

2. For a continuous, uninterrupted period of two years from November 13, 2018, (excluding any periods of Defendants' non-compliance and time spent enforcing their obligations) from:

    a. Directly or indirectly soliciting by mail, telephone, electronically, via the Internet, in person, or by other means, any person for whom tax return preparation or other Authorized Services (as defined by the FLA) were rendered at any time during the term of the FLA by Defendants or their Franchised Business;

    b. Directly or indirectly diverting from H&R Block or H&R Block franchisees, any person for whom tax return preparation or other Authorized Services (as defined by the FLAs) were rendered at any time during the term of the FLA by Defendants or their Franchised Business;

    c. Directly or indirectly engaging in any business which offers any product or service the same as or similar to any Authorized Services (as defined by the FLA), including without limitation tax preparation services, in or within 25 miles of the Franchise Territory set forth in the FLA (and described in Exhibits A and B to the FLA);

3. Directly or indirectly divulging and using information and knowledge concerning clients, the methods, promotion, advertising or any other systems or methods of operation of H&R Block's business that Defendants acquired by virtue of their operation of the Franchised Business under the FLA;

4. Retaining or using any articles which display any of the Licensed Marks (as defined in the FLA) or the trade names of H&R Block, including signs or logos of H&R Block, and to immediately return all such items to H&R Block; and

5. Operating the tax preparation office located at 781 Behrman Highway, Gretna, Louisiana 70056, including without limitation any business operating under the names "Max Tax" or "The Original Max Tax."

**IT IS FURTHER ORDERED** that, under the circumstances of this case, the terms of the injunction do not pose a material risk of any injury to Defendants and no security is necessary. Nevertheless, H&R Block has submitted a bond in the amount of $10,000 that will serve as security for this Preliminary Injunction.

**IT IS FURTHER ORDERED** that this Order shall take effect immediately, incorporates the terms of the Temporary Restraining Order, Doc. 13, entered in this case on March 11, 2019, with the exception of paragraph six, which the Court now vacates, and the subsequent Order granting an extension of the Temporary Restraining Order, Doc. 16, entered on March 25, 2019, and, absent further Order of this Court, shall remain in effect through entry of final judgment in the case.

**IT IS SO ORDERED.**

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 28, 2019
Jefferson City, Missouri